Purple. I'll hear from you first. And Your Honor, would you prefer that I keep the mat? No, you may. You may remove it if you wish. Thank you. Either way. May it please the Court. My name is Bob Plunkett and I represent the appellants, Camden County, Missouri, Camden County Commission, and Greg Hastie in his personal capacity, Mr. This appeal pertains to really two general issues, qualified immunity and the motion for a preliminary injunction being granted. I'm happy, judges, to address either of those two if there are questions that you are leaning toward one or I can just proceed with qualified immunity. So I will proceed with qualified immunity. I'm assuming that you're familiar with the facts, but I think one of the things that I would like to at least reiterate is that this case involves a ban that was issued by the commission. The letterhead was commission letterhead and it states in joint appendix page 13, on March 2, 2021, the Camden County Commission voted to ban you from Camden County property for one year from March 2, 2021, for disruptive conduct and harassment conduct of county elected officials and employees. This second sentence is important. If you are found to be on Camden County property during this one year period, law enforcement officers will be instructed to remove and escort you from the property. There are three prongs here that I would like to discuss with respect to why the district court erred in denying qualified immunity at the motion to dismiss stage. The first is that there must be a protected activity alleged. As you're familiar under Ashcroft v. Iqbal, threadbare recitals are not enough, legal conclusions are not enough. We do not have enough here with the complaint to understand what activity it is that was alleged to have been violative of the Constitution. Counsel, could you be a little more specific about that? Didn't he allege that he was wanting to speak at city council meetings? He alleged, Judge, he alleged that he voiced opinions. So to the extent that that's what you're referencing, I do agree. But he didn't say what the opinions were. He didn't state where it was that he may have voiced them. As you know, the First Amendment is not absolute. For example, in this courtroom, other litigants can't just come up and start talking. There is certain times and place and measurements that can be imposed. And we don't have that information. So the district court can't give an analysis with respect to whether the activity was protected. If, for example, at a council meeting, Mr. Rennie spoke up out of turn, that's not protected activity. So, again, in order to have this analysis, we don't, we get off on. Don't we have to make reasonable inferences in his favor? All reasonable inferences, factual inferences can be, of course, in a motion to dismiss, viewed in a light most favorable to Rennie. But Ashcroft v. Iqbal, which involved qualified immunity, you know, this is defense from suit. And we really need to have enough facts to make sure a public official does not go through the entire lawsuit, not knowing what the voiced opinions were that may be grounds for protected activity or not. You're not implying that they have a content-based policy hearing that matters what his opinions are ahead of time? No, the content was content of what Mr. Rennie may have said or did not say, since we don't know what it is that he said, had nothing to do with that ban. As stated in the ban letter, harassment conduct and disruptive conduct. So the second of the three prongs that I wanted to address with respect to the qualified immunity aspect is that the behavior is chilled. And you look at this from a point of view of a person of ordinary firmness, Your Honors. And here we can look at what is embraced by the pleadings. We can look at what is involved in the public record. Mr. Rennie live streamed himself after the ban going to the courthouse with a hat that says arrest these nuts and essentially mocking the ban and saying, well, I guess nothing's going to happen. And I'm paraphrasing, of course, and the verbatim language is in the briefing. But he is, he is flaunting at it. He is defying it openly. That is not an individual who is chilled. In fact, it seems as though. Counsel, it's an objective standard. This Court has previously talked about individuals who are especially determined, who are not your average person. I, Judge, I do understand that the objective standard is what's been discussed, but under Nock versus the City of Park Hills, the plaintiff is something that's very important to that analysis. And in Nock, that came out of 2002, that cited a citizen spoke out and she said she was the subject of retaliation. And the Court found that it was important that in the face of these untoward comments, she continued to speak out. And the Court affirmed, I believe it was affirmed summary judgment, or at least upheld or dismissed the case. So I think that when courts look at this, they look to see really the plaintiff, how is the plaintiff behaving, understanding that that informs strongly this objective standard. And also Shuffler is another important case, Judge, that is out of the Eighth Circuit from 2014. This is why I said that last line from the ban was so important. This Shuffler matter involves a line that basically the Eighth Circuit, this Court, said whatever the police might do with respect to a threat of we will have the police prosecute, arrest you or whatnot, was in their, quote, was in their discretion, not in the billing inspectors in brackets. So here, this second line of the ban says that police, law enforcement will be called and will be instructed to remove. So isn't that a credible threat? It never happened, Your Honor. So I don't, I don't believe that it ever surfaced. And then I will get the credibility of that. So, Judge, it never happened. And the police, law enforcement was never, they never escorted him from the property. And seven months after, this gets a little bit into the standing, but this ban was repealed. This ban was repealed in a way that was very clear on the face of the letter, that was not open for repetition. It was permanent. It would not be reinstated. So going to the third aspect of qualified immunity, there is no, as this Court is repeatedly, as we see from the Supreme Court, repeatedly telling circuit courts that we don't look at qualified immunity from a high level of generality. And the question here on the third prong is, can Greg Hastie, the presiding commissioner, violate or directly violate Mr. Rennie's rights when the ban was issued from the Commission? Mr. Hastie is one of three voting members of the Commission, and that letter came straight from the Commission. There is no controlling authority from this Court or the Supreme Court as to that issue. And I've cited some cases that discussed confusion that surrounds that, including the Sims case out of the Fifth Circuit. And quite frankly, the but-for cause, you cannot have the presiding commissioner do anything of that sort. The presiding commissioner cannot act alone. And that is what we look to. We also look to a robust consensus outside the circuit if we can't find controlling law. And as you've noticed from the response brief and indeed my research, judges, we don't see any controlling authority. We don't see a robust consensus. Sims says it was uncertain and confusing. And that was just in 2018 in the Fifth Circuit. It's an interesting issue, but I didn't see where it was raised in the district court. Was it raised in the district court, this question? It was, Judge. Where would I find that? It's a very good question. I can research that, Judge, and let you know. I believe I raised it at the motion to dismiss stage. I believe I said that Mr. Hastie, there's no clearly established law that Mr. Hastie can act in a way by being one voter of the commission that can violate the rights. Now, it wasn't briefed any further on response. As this court's aware, it is the burden of the plaintiff to have the clearly established law set before the court. So that wasn't discussed. And that's part of the issue that I have on this appeal, because the underlying order also doesn't discuss that in any depth to give a clear reviewable order. Counsel, under your theory, as long as government officials acted as a committee or in concert, would they be immune from all liability? Immunity is, at least until there's clearly established law to say something to the opposite. And if it's an executive manner, qualified immunity would apply if it's one voting member when the actual action is taken by the body as a whole. That is correct. But when you see officers and you see certain things like in excessive force cases, that officer is acting and directly impacting the plaintiff or whatnot. So this is when there's a vote and the voters is the distinction I would draw, Judge Gross. And I see that I have 30 seconds left until rebuttal time. The other issues with respect to the motion for preliminary injunction, these have been briefed and there are five main issues. But I want to at least emphasize mootness. This ban was repealed before the grant of the motion for preliminary injunction. This is a governmental entity. And as this Court has found in previous decisions, it's slightly less onerous for a governmental entity to, for a plaintiff to, or for them to show that this is not going to be repeated. In other words, a plaintiff who's incapable or easily evading review. Governmental entities get a little bit of a better standard here. They have to pass these laws. They have to do so. And this ban was unopposed when it went into the record. There was no evidence to show whatsoever that it was faulty, incorrect, or anything about foundation authenticity. It was in the record and evidence. So I see my time. What was undisputed? So the letter. The ban was undisputed. The letter repealing the ban. I think you misspoke. You mean the repeal. I apologize, Judge. That's right. You're relying on the cases involving legislatures where the Court has said if a legislature passes a new statute, then the potential that another legislature could go back and reenact the previous statute is not enough to defeat mootness. Is that right? Some of these cases do deal with legislative, but trials versus pain deals with an issue in prison where there was a hormone therapy given. And in that case, there was an affidavit that was unopposed. And here we have a letter that was unopposed. So with no evidence to suggest that it's going to be, and now the year is up, right? So it cannot be opposed. What do you mean the letter was unopposed? Who would oppose a letter? I don't understand what you mean by that. Sure. So at the motion for preliminary injunction hearing, plaintiff could have adduced evidence or cross-examined any of the Commission members with respect to that letter. And so it got sent, it was introduced into evidence by stipulation. Yeah, I see what you mean. All right. You may reserve the balance for rebuttal if you'd like. Thank you, Judge. All right, Ms. Wheelwright, we'll hear from you. May it please the court. My name is Brooke Wheelwright and I represent a Pelley plaintiff in the underlying lawsuit, Nathan Rennie. At the heart of this case is a basic tenet of our democracy, the right to freely engage in political debate. Despite this, when Mr. Rennie expressed his political opinions that Commissioner Hasty disagreed with, Commissioner Hasty caused the Camden County Commission to issue a ban, banning Mr. Rennie from all county property for one year. After an evidentiary hearing and a great deal of briefing below in front of the district court, the district court granted plaintiff's request for preliminary injunctive relief and denied Commissioner Hasty's motion to dismiss on the basis of qualified immunity. Both of these orders should be affirmed in their entirety, and I'll start, as counsel did, with the motion to dismiss in qualified immunity issues. The case law provides that the qualified immunity doctrine is governed by a simple principle. State officials are protected from making bad guesses in gray areas. They're not protected from transgressing right constitutional lines.  First, whether the state official engaged in conduct violating the plaintiff's constitutional rights. And second, whether the constitutional right allegedly violated was clearly established. I'm sorry to interrupt, but maybe you could go to the specific points that the appellant is arguing here. He says, for example, the complaint didn't allege protected activity. Yes, thank you, Your Honor. The complaint alleges a number of instances of protected activity. In the complaint, the first handful of paragraphs are setting forth speech that Mr. Rennie engaged in, and specific instances that he spoke about at these Camden County Commission meetings. In paragraph 14, in our complaint specifically, sums up these prior allegations and says that during this relevant time period, plaintiff voiced his opinions regarding Camden County's conduct, including the allegations raised herein, publicly and on social media, including Facebook. This allegation that includes the prior allegations very clearly establishes that Mr. Rennie was engaged in protected speech at the Commission meetings, as well as on social media. The allegations then go on to state that the defendants were certainly aware of these statements that Mr. Rennie made. For instance, in paragraph 17, plaintiff alleges that Commissioner Hastie referenced plaintiff's specific criticisms and the criticisms he made on Facebook. Commissioner Hastie didn't like the statements that plaintiff was making. There's no doubt that plaintiff was engaged in protected speech and that the Commission knew exactly what it was. Turning next to counsel's argument that the speech that plaintiff engaged in, or that plaintiff was not chilled based on the ban. As counsel stated, after the ban was instituted, plaintiff did go on county property. Plaintiff went on county property to cast his early vote in an upcoming public election. As your honor stated, the test to determine whether plaintiff was chilled is an objective test. And it's for the very reason that state officials do not get to violate the rights of those who are more resilient than others. And so there's a case out of the Eighth Circuit, and I believe it's the Benny V. Munn case, that states, in fact, a plaintiff's subjective reaction is irrelevant in determining whether that plaintiff was chilled. Whether that plaintiff's First Amendment rights were chilled. Counsel also references the Knott case, which is out of the Eighth Circuit. I believe that they're misrepresenting the holding of that case. That case does not state, when a plaintiff continues to speak, that that means that that plaintiff was not, speech was not chilled. In the Knott case, the court held that the chilling conduct, which was criticisms of the speaking plaintiff, wasn't enough to chill an ordinary person. The court also stated that that particular plaintiff did go on to speak. But the holding of that case is that the adverse action was simply criticism of the plaintiff. That's not what we have here. Here, the adverse action was instituting a ban against an individual, telling him that he cannot go on county property for an entire year. And if he does, law enforcement will be called. Counsel, question for you. When I look at the letter that was sent to Mr. Rennie, it's signed by Mr. Hastie, presiding commissioner. And it appears to report to him the action that was taken by the commission. So what are the allegations against Mr. Hastie specifically? Is it more than just what's reflected in this letter? What distinguishes Hastie from the other two commissioners? Thank you, Your Honor. What distinguishes Commissioner Hastie is set forth in a number of paragraphs in our petition. Specifically, paragraphs 19 and 32 establish that Commissioner Hastie was the cause of the ban. Commissioner Hastie caused the Camden County Commission to issue the ban. And now, of course, we are on a motion to dismiss. We need to take these allegations as true. Construe them in plaintiff's favor. Paragraph 32, for instance, states that Defendant Hastie specifically targeted plaintiff because Hastie disagreed with plaintiff's viewpoints and, upon information and belief, personally ensured plaintiff's freedom of speech was censored by the commission. So here, we don't just have Commissioner Hastie signing the letter. We have him being the sole cause, as alleged in the petition, behind this ban. The sole? How can he be the sole cause? I thought this was a three-member commission where two votes would be required to act. Excuse me, Your Honor. The sole cause was an overstatement. He was a chain in the causal link causing this ban to be issued. The... Well...  The other commissioner who voted in favor. Are you saying that the sponsor, say, of a piece of legislation is more liable than one who votes in favor of the sponsored legislation? I think I understand the analogy the Court's trying to make here. First, I would argue that... Well, not legislation, but whatever you want to call this, resolution or action by the commission. Why is the sponsor or the person who proposed it liable as opposed to the other person who joined and made the majority? Well, I think there is a separate question of whether the other commissioner that voted in favor of this ban suit could be brought against him in his personal capacity for voting. However, we haven't done that, and so that's not before the Court today. But I do believe what distinguishes Commissioner Hastie, as we allege in our brief, is he is the individual that spoke out at the commission meeting that he did not like plaintiff's speech. He is the one that put before the commission this issue of banning the plaintiff. And I think our allegations in paragraphs 16 through 18, which allege that... I'll summarize the three paragraphs. That plaintiff engaged in this protected speech. Commissioner Hastie specifically mentioned at a commission meeting that he didn't like plaintiff's speech and the comments that plaintiff made on Facebook. And then shortly thereafter, the ban was issued. If we look at these allegations together, there is a temporal connection, which we need to read in plaintiff's favor, between plaintiff's speech, Commissioner Hastie's criticism, and the issuance of the ban. There's more than just Commissioner Hastie being a voting member here. He was the cause of this ban. He was the impetus behind it. And again, this is what's alleged in plaintiff's petition. In complaint, excuse me. So what is your... Do you have a case for this proposition of personal liability for a single commissioner? Yes, Your Honor. In a situation like this? The closest cases that I have are... I mean, the county and the county is a defendant here, right? Not to this qualified... Not to this issue of qualified immunity, Your Honor. Well, you saved the county. Oh, correct. In a separate count, yes. Yeah. So why do you need... You have a Monell claim against the county. So the question... Go ahead, Judge. No, that's the question. What's your authority that tells us that there's a separate claim, that this commissioner should have been aware, should have known, that his action in submitting this to the commission and getting it passed was going to subject him to liability or was violative of your client's constitutional rights? Judge, we cite three cases. In our briefing, we cite the Strickland case out of the Eighth Circuit, the Andrews... I'm going to struggle pronouncing this one. Andrews case out of the Eastern District of Missouri. And then we also cite a University of Missouri versus Dalton case, which is out of the Western District of Missouri. And what these cases hold is that when a member of a government entity is a voting member of a policy, of a resolution, that individual can be sued in their individual capacity. And I think the best authority on this point is the University of Missouri at Columbia National Education Association versus Dalton. It's the Western District case. Those cases say that a voting member can be held liable in their individual capacity. Here, I believe we have more than that, as Commissioner Hastie wasn't simply a voting member, although these cases say that is enough. He was the cause behind putting the issue of the ban before the commission. Defendants cite cases in their briefing, and I'd like to talk about those for a moment, that allege to contradict this position. The cases cited by the defendants are, and Commissioner Hastie, are outside the Eighth Circuit. They're unreported decisions. And for each decision cited, we are able to cite a contradictory decision in that district. I think it's also important to note, all of the cases cited by defendant are due process violations that are at issue in those cases. The cases that we cite in response support our position that Commissioner Hastie is liable. And in those cases that we cite in response, they're First Amendment violation cases. So I don't think that defendant's cases are cases that this, they are not the cases this court needs to follow as they are unreported outside the Eighth Circuit cases. Well, the question though is whether there's clearly established law that a member of a commission like this or a legislative body can be liable for voting or urging action by the legislative body. So doesn't the fact of conflicting authority work against clearly established law? Your Honor, first, I don't believe there is conflicting authority in the Eighth Circuit. I believe the Eighth Circuit is clear. I thought you were relying on a district court case out of western Missouri. You don't have a case from this court, do you? There's an Eighth Circuit case. It's the Strickland v. Inlow case. And that's a case, it's got a bit of a tortured history. It was heard before the Eighth Circuit. It went up to the United States Supreme Court on an issue. What do you think the holding is that's relevant here? That's relevant here, that an individual voting member of a government entity can be held individually liable. It goes up on other issues. And, but there is an Eighth Circuit case, and that is stated in that case. Was this issue raised in the district court? I thought your brief said it wasn't raised. Your counterpart says it was raised, and the district judge didn't seem to address it at all. It made me wonder whether it was raised, but now he says it was. What's your view on that? Judge, my review of the record is that it wasn't raised in the motion to dismiss, which is, of course, the motion we're on before the court here today. I believe where it was raised is defendant's answer after their motion to dismiss was denied, and therefore, it wasn't considered by the district court in the motion to dismiss ruling. And this issue was not, these cases were not briefed below. So when you say you think it wasn't raised and we shouldn't consider it, you mean for purposes of the qualified immunity appeal? Correct. The issue could still be raised as a defense as it was in the answer in further proceedings? Yes, Your Honor, with the caveat that I believe that it could continue to be raised. I would maintain the position that it's a, the position lacks merit, but if it's... Yeah, no, I'm talking about not the merit of it, the procedural posture. Correct, Your Honor. Because a person doesn't have to raise every defense in a qualified immunity motion. One can raise defenses at summary judgment or a trial. Correct. Yeah, okay. Well, we'll look at that. Go ahead. Your Honors, I just have a bit under a minute left. Are there any questions on the preliminary injunction piece of this that I can answer briefly before I go? Why isn't it moved? The answer, the district court's holding, or the district court... Let me take a step back. Defendants argue that it's moved because they issued this letter withdrawing the ban. Defendants' arguments totally ignore the district court's factual findings surrounding that letter. They ignore that the district court was concerned with the legitimacy of the letter because there was no evidence presented regarding how the letter withdrawing the ban came to be. There's safety measures that were implemented, referenced in that letter. There's no evidence as to what those safety measures were. And last, and I think most importantly, the district court was not convinced... Your Honors, I see I'm out of time. Can I finish my answer to this question? Why is the nature of the safety measures important? As I understand it, the letter said due to increased or different safety measures, we've decided to eliminate the ban and it will not be reinstated. Why is the nature of the safety measures important to whether there's a reasonable prospect of reinstatement? I think that my understanding of the district court's opinion is that that goes to the district court's concerns regarding the legitimacy of this letter. There was no additional evidence presented after that letter was put into evidence. The defendants presented no evidence in support. And so I think it was simply another concern that the district court had regarding the statements set forth in the letter. If I could wrap up briefly, the district court was concerned with the commission instituting a similar ban in the future. And I think that is the heart of why the proceedings below are not moot. Very well. Thank you very much for your argument. All right, we'll hear rebuttal. Yes, Judge, thank you. To answer your question, in the suggestions in support of the motion to dismiss, there is a section about qualified immunity. And there is page 60 through 61 is what I'm reading, a portion. Plaintiff cannot establish a commissioner in his, her, individual capacity can be liable for voting for an allegedly overbroad ban. And at some point, there is the burden for the clearly established law to be placed on plaintiff and that was not done in response. And in my reply, which is document 26 below, that was a point that I made that said this wasn't to argue there was no clearly established law to show that a voting member could be. So counsel, it seems to me the Supreme Court has said that what we're looking for in the clearly established prong is whether the right is clearly established. The right to be free from retaliation, the right to speak freely. Why would the clearly established prong apply to a procedural question? Oh, goodness. I think the, for example, this, this circuit has addressed recently intercorporate conspiracy doctrine. And similarly, that doesn't directly touch on a right but goes through a defense. I don't believe that it is so narrowly constrained to be the First Amendment right. But I think it goes to, excuse me, the entire cause of action for retaliation, which includes, as I mentioned, protected activity, ordinary, person of ordinary firmness and shilling effect, and then causation. And so this pertains to the causation prong. And I do believe that the clearly established law has to pertain to each of those elements in order for that right to be established, Judge. And the, the question or the discussion earlier on the response, there is no greater weight of the votes. Each commissioner has one vote. Therefore, there is nothing but for cause by Greg Hastie's vote. In fact, with his vote, this could not have happened. There needs to be more to institute such a policy or a ban. And then to touch on a few other things very quickly about the evidence and the safety measures that was raised in the, the district court's order. There was no evidence to contradict the letter and the letter came into evidence. So those safety measures are now evidence and there is nothing to dispute the credibility of that. There was no witness, no other documents. So that is where I, I contend and respectfully to the district court that an abuse of discretion may happen when there is no evidence to the contrary. Almost, almost like a summary judgment standard, but of course, not exactly. Counsel. Counsel, question. Do you, do you think the district court even went into really the qualified immunity analysis? Did, did, did the district court even go into this business of an individual commissioner's liability and whether there was a, whether there was, could be liability, could be liability number one and then this clearly established issue. Did, did district court even evaluate and, and rule on those issues? Sure, and Judge Seppert, I see my time is out and I'll be happy to answer that. This is Carter versus Ludwig was a non-published decision just cited within the last few weeks from the Eighth Circuit discussing that there is no, if there needs to be a reviewable order and to your point, Judge, I did not see the district court analyze any of those prongs, let alone plaintiff and the burden again is on the plaintiff to do so and that was the point I raised on the motion to dismiss. So I, I would, I would imagine that this court would want a reviewable order and I unfortunately don't believe that that's the case. So I see that my time is out. Unless there are any other questions, Your Honors, I appreciate your time. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Thank you. Counsel.